**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**at PIKEVILLE**

**CIVIL ACTION NO. 07-209-DLB**

**DAVID S. BENTLEY**                                                              **PLAINTIFF**

**vs.**                              **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security**                                                         **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff David S. Bentley filed applications for disability insurance benefits (DIB) and social security income (SSI) payments on December 27, 2004. (Tr. 14, 53-57).  Plaintiff was 38 years old on the alleged disability onset date of March 15, 2004.  (Tr. 14, 87).  He alleges disability due to back and neck injuries, back and neck pain, left heel and ankle pain, pain in both knees, nerve problems, depression, mood swings, trouble sleeping, nervousness, anxiety, and high blood pressure. (Tr. 87).  His applications were denied initially and on reconsideration. (Tr. 31-45).  At Plaintiff's request, an administrative hearing was conducted on January 17, 2007, by Administrative Law Judge (ALJ) James D. Kemper, Jr. (Tr. 443-71).  On March 26, 2007, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB or SSI payments. (Tr. 14-21).  This decision became the

final decision of the Commissioner when the Appeals Council denied review on September

14, 2007. (Tr. 4-6).

On October 5, 2007, Plaintiff filed the instant action.  The matter has culminated in

cross motions for summary judgment, which are now ripe for adjudication (Doc. #10, 11).

## II.     DISCUSSION

### A.     Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether

it is supported by substantial evidence and was made pursuant to proper legal standards.

*See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

"Substantial evidence" is defined as "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve

conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to

affirm the Commissioner's decision, provided it is supported by substantial evidence, even

if we might have decided the case differently.  *See Her v. Comm'r of Social Security*, 203

F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers

whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal

a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her

past relevant work; and Step 5, whether significant numbers of other jobs exist in the

national economy which the claimant can perform.  As to the last step, the burden of proof

shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security*, 336
F.3d 469, 474 (6th Cir. 2003); *Preslar v. Secretary of Health & Human Servs.*, 14 F.3d
1107, 1110 (6th Cir. 1994).

### B.    The ALJ's Determination

At Step 1, the ALJ found that claimant has not engaged in substantial gainful activity
since the alleged onset of his disability. (Tr. 16).  At Step 2, the ALJ found Plaintiff's
hypertension, cervical osteophytes with left sided radiculopathy, chronic back strain, left
heel spurs, degenerative joint disease of the left ankle, and left Achilles tendon tear to be
severe impairments within the meaning of the regulations. (Tr. 16-17).  At Step 3, the ALJ
found that Plaintiff does not have an impairment or combination of impairments listed in,
or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 17).  At
Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to:

> lift or carry twenty pounds occasionally and ten pounds frequently; stand and
> walk for two hours in an eight-hour workday; occasionally operate foot
> controls at the light level; never climb ladders, ropes, or scaffolds; and
> occasionally climb ramps and stairs, stoop, and crawl.  He should also avoid
> concentrated exposure to extreme heat, cold, vibration, and hazards.

(Tr. 18).  Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to
perform his past relevant work as a residential support provider, equipment operator, and
machine operator. (Tr. 19-20).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation.  At
Step 5, the ALJ found that there were a significant number of jobs available to Plaintiff in
the national and regional economies, despite his limitations. (Tr. 20-21).  This conclusion
resulted from testimony by a vocational expert (VE), in response to a hypothetical question
assuming an individual of Plaintiff's age (38 years of age on the alleged disability onset

3

date and so "a younger individual"), education (high school), work experience, and RFC. (Tr. 20).   The VE testified that Plaintiff could work as a machine tender, surveillance monitor, and grader/sorter/selector. (Tr. 20, 469-70).   Since these were positions of significant number in both the regional and national economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act. (Tr. 21).

### C.     Analysis

Plaintiff raises a single challenge in his appeal.   Plaintiff argues that the ALJ improperly acted as a medical expert in evaluating the evidence.   Specifically, Plaintiff claims that the ALJ erred by "playing doctor" with respect to Plaintiff's Mountain Comprehensive Care Center (MCCC) records.

Plaintiff's MCCC records were submitted at Plaintiff's January 17, 2007, hearing. (Tr. 431-39).   These records reveal that, on September 8, 2006, Kristin Addington, M.S., a therapist, assigned Plaintiff a Global Assessment of Functioning (GAF) score of 50. (Tr. 435).   A GAF score of 50 indicates serious symptoms that present serious difficulty in social, occupational, or school functioning.   American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text revision 2000).   In the September 8, 2006, report, Ms. Addington placed the Plaintiff's highest GAF in the past year as 55. (Tr. 435).   A GAF score of 55 indicates "moderate" impairment in social, occupational, or school functioning.   American Psychiatric Ass'n, *supra*, at 34.

Plaintiff argues that the ALJ erroneously adopted the opinion of state agency consultants who determined that Plaintiff did not have a severe mental impairment. (Tr. 358-85).  Plaintiff points out that, as the most recent state agency consultants' opinion was dated August 24, 2005 (tr. 373-85), and the first MCCC record was dated September 8,

2006 (tr. 431-39), the state agency consultants did not have the opportunity to evaluate the MCCC records for their medical significance. Thus, Plaintiff argues that, for the ALJ to reject the MCCC opinion, the ALJ was necessarily acting as "his own medical expert." (Doc. #10-2 at 2).

Contrary to Plaintiff's position, substantial evidence supports the ALJ's determination to reject the MCCC opinion. Moreover, the ALJ did not improperly act as a medical expert in the course of evaluating the evidence. Importantly, the ALJ did not merely reject the MCCC opinion in favor of the state agency consultants' opinions. Rather, the ALJ provided a well-reasoned analysis concerning the deficiencies in the MCCC opinion and the ways in which it was inconsistent with the evidence.

The ALJ explicitly addressed the MCCC opinion, noting that Plaintiff was assigned a GAF score of 50 and explaining his rationale for rejecting this assessment. (Tr. 17, 435). For instance, the ALJ stated that his rejection of the MCCC opinion was based, in part, on Plaintiff's failure to seek treatment for his alleged psychological impairments prior to September 2006. (Tr. 16). The Sixth Circuit has determined that the failure to seek mental health treatment can be considered when assessing the credibility of a plaintiff's allegations. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (finding that it significant that claimant sought no medical assistance for any mental impairment until year of application); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (recognizing that claimant's history of "only sporadic psychiatric visits" was a relevant consideration in determining that claimant does not suffer from a disabling mental disorder). Significantly, the GAF score assigned by Ms. Addington was the result of a one-time assessment. The ALJ noted that, less than a week after the MCCC assessment, Plaintiff discontinued

treatment after reporting to his therapist that he was "doing OK." (Tr. 17, 436).  Thus,
Plaintiff's treatment history (or lack thereof) supports the ALJ's finding that Plaintiff does not
suffer from a disabling psychological impairment.

 The ALJ further reasoned that Plaintiff's activities of daily living were inconsistent
with Plaintiff's alleged psychological impairments. (Tr. 17).  The record indicates that
Plaintiff cares for his personal needs, uses the telephone and postal system, prepares
simple meals, and helps with household chores. (Tr. 17, 111-116, 355).  The ALJ provided:

> [T]he overall record evidence shows the claimant, as a result of unspecified
> affective and personality disorders, experiences no restriction of activities of
> daily living; mild difficulty maintaining social functioning; mild difficulty
> maintaining concentration, persistence, or pace; and has never experienced
> an episode of deterioration or decompensation.

(Tr. 17).

The ALJ also cited an April 16, 2005, consultative examination performed by Wayne
Edwards, M.D. (Tr. 16-17, 351-57).  Dr. Edwards diagnosed Plaintiff with mood disorder
and personality disorder. (Tr. 355).  He assigned Plaintiff a GAF score of 70. (*Id.*).  A GAF
score in the range of 61-70 indicates that an individual has a mild degree of psychological
symptoms and generally functions pretty well.  American Psychiatric Ass'n, *supra*, at 34.
Dr. Edwards concluded that Plaintiff was able to work an eight-hour day, five days per week
without significant psychiatric symptoms. (Tr. 356).  The ALJ's reliance on Dr. Edwards'
evaluation coupled with his identification of inconsistencies between the MCCC
assessment and the record evidence undermines Plaintiff's position that the ALJ simply
"played doctor" in reaching his conclusion.

The various cases relied upon by Plaintiff are easily distinguished from the instant
action.  Plaintiff's reliance on *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000), in support

of his position that the ALJ "played doctor" is unfounded.  In *Green,* the Seventh Circuit

concluded that the ALJ abused his discretion in not summoning a medical expert to analyze

conflicting test results, instead interpreting such test results himself and thereby

impermissibly "playing doctor."  As subsequently clarified by the Seventh Circuit, "[t]ypical

cases of ALJs impermissibly 'playing doctor' are when they either reject a doctor's medical

conclusion without other evidence, or when they draw medical conclusions themselves

about a claimant without relying on medical evidence."  *Back v. Barnhart*, 63 Fed. Appx.

254, 259 (7th Cir. 2003) (unpublished opinion) (internal citations omitted).  In this case, the

ALJ relied on the medical evidence in reaching his determination.  Additionally, the ALJ

identified a number of inconsistencies between the MCCC opinion and the evidence.  The

regulations direct the ALJ to evaluate the medical evidence, resolve conflicts in the record,

and determine a claimant's RFC.  20 C.F.R. §§ 404.1527, 416.927.  That is precisely what

the ALJ did here.

Plaintiff relies on *Manso-Pizarro v. Secretary*, 76 F.3d 15, 17 (1st Cir. 1996), for the

proposition that an ALJ is not qualified to interpret raw data in a medical record. (Doc. #10-

2 at 4).  *Manso-Pizarro* is not only factually distinguishable from the instant action, but it is

also not binding on the Court.  In *Manso-Pizarro*, the First Circuit vacated and remanded

an ALJ's opinion where the illegibility of medical records and the ALJ's failure to consult a

medical expert to ascertain whether the claimant had the RFC to return to her former work

cast doubt on the ALJ's disability determination.  *Id.* at 19.  In the instant action, however,

the ALJ did not interpret raw data.  Rather, the ALJ performed his proper role by weighing

the evidence and identifying inconsistencies in the record, which undermined the MCCC

findings. The ALJ was well within his discretion to find that the MCCC opinion was inconsistent with the record evidence.

Finally, Plaintiff cites *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994), and *Pratts v. Chater*, 94 F.3d 34 (2nd Cir. 1986), arguing that the ALJ is precluded from rejecting the opinion of an examining source and adopting the opinion of a non-examining source where the non-examining source's opinion is not based on the entire medical record. (Doc. #10-2 at 5). The Court need not address the merits of this argument, as Plaintiff has conveniently ignored the fact that the ALJ's opinion was not solely based on the conclusions of non-examining sources and was based, at least in part, on the consultative examination completed by Dr. Edwards, an examining psychiatrist. (Tr. 16-17, 351-57). Moreover, as has been discussed previously, the ALJ referenced a variety of factors that undermined the MCCC opinion.

One further matter deserves comment. Much of Plaintiff's argument focuses on the ALJ's failure to properly consider the GAF score assigned by Ms. Addington. However, consideration of GAF scores is not essential to determining an individual's RFC. *See Howard v. Comm'r of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."). The Sixth Circuit has stated that it is "not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir. 2006) (unpublished opinion).

8

## III.    CONCLUSION

The record contains ample evidence supporting the ALJ's finding that Plaintiff is not disabled.  While the record contains conflicting opinions as to Plaintiff's functional ability, the Court finds that the ALJ properly performed his duty as trier of fact in resolving the conflicts in the evidence.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971).  Put simply, the ALJ's opinion is supported by substantial evidence.  Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #10) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Commissioner's Motion for Summary Judgment (Doc. #11) is hereby **GRANTED**.

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 28th day of August, 2008.



Signed By:

*David L. Bunning*   DB

United States District Judge